UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAFIEL RIGGINS,

                  Petitioner,                          Case No. 09-13144

v.                                                 HON. AVERN COHN

STEVEN RIVARD,

                  Respondent.

_____/

## MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Rafiel Riggins (Petitioner), proceeding pro se, is incarcerated at a Michigan correctional facility as a result of his state court conviction of assault with intent to commit murder, M.C.L. §750.83, felon in possession of a firearm, M.C.L. §750.224f, and possession of a firearm during the commission of a felony, M.C.L. §750.227b. Petitioner was sentenced to 30-to-60 years for the assault conviction, a concurrent term of 1-to-5 years for the felon in possession conviction, and a consecutive ten years for the felony firearm conviction. Petitioner raises eight claims, as will be set forth below. The petition will be dismissed because none of the claims warrant habeas relief.

### II. Background

#### A. Factual

Petitioner's conviction resulted from the shooting of Robert Mynum. The following was the evidence at trial.

Over a period of several years prior to the shooting, Petitioner and the victim, who were close friends, were each involved in a sexual relationship with Monique Brothern.  On May 8, 2006, Brothern called Mynum numerous times because she wanted to see him later that night.  Petitioner was with Mynum and other men at a house when Brothern called.  After Petitioner left the house, Mynum went to meet Brothern in front of her house.

When Mynum arrived at Brothern's house, she walked outside and stepped into his minivan.  As they talked in the van, Mynum heard gunshots coming from outside the passenger side of the van.  Brothern climbed out the van, and Mynum dropped to the floor.  Mynum was shot in the left ankle, left lower leg, left upper thigh, left buttocks, and right calf.  After the gunshots stopped, Mynum saw Petitioner open the van door, holding a gun, and looking angry.

Mynum initially thought Petitioner was there to save him; however, before falling and passing-out, Petitioner hit him in the head with the gun.  Mynum also remembered hearing Petitioner's voice as he was kicked, just prior to losing consciousness.  Mynum never saw Petitioner firing the gun.

Brothern, who had run back to her house after the shooting, looked out her window and saw Petitioner lift Mynum out of the van.  She then she saw Mynum falling on Petitioner.  Petitioner pushed Mynum off and kicked him in the face.  Brothern ran outside to help; Petitioner told her to get back in the house.  Brothern never saw Petitioner with a gun.

According to Petitioner, he went with Mynum to pick up Brothern.  After she climbed into the van, a car drove by and fired multiple shots.  Some shots hit Mynum;

2

Petitioner pulled him out the van.  Petitioner grabbed a gun he saw lying in the middle of the street, as he dragged Mynum to the sidewalk.  Petitioner attempted to pull Mynum to the house for safety and only slapped him in the face in an attempt to revive him.

Tezereina Lewis, who resided on the same street, testified that she looked out her window after hearing gunshots to see one person on top of another, beating him multiple times in the head.  The man on top asked if the other man was "ready to die." The man on top then handed something off to a third person.  When police arrived, this man told them that somebody had hurt his friend.  Lewis called police and told them the man claiming to be a witness had been hitting the other man.  Lewis identified the attacker as wearing a red t-hirt, the same color shirt Petitioner was wearing when police arrived.

A second neighbor, Kathleen Starasinich was in bed, watching television, when she heard gunshots.  She called 9-1-1, heard another gunshot, and then the sound of someone getting beaten.  One man said, "come on bitch, wake up," and "I'm going to fuck you up, bitch."  In between these statements, Starasinich heard another gunshot. A few minutes later the police arrived.  Starasinich went to the scene.  She heard Petitioner telling policemen, "that's my boy, that's my man. You all ain't going to get an ambulance for him."  Starasinich believed that Petitioner's voice was the same one that earlier said "I'm going to fuck you up bitch."  She told this to police officers.

Police Officer Ricky Betts arrived on the scene after a call of shots fired and an assault.  Mynum was lying in the driveway covered with blood.  Petitioner stood nearby, talking to other police officers on the scene.  Betts recovered a handgun near a fence about fifteen feet from the minivan, and ten feet from the location of Mynum and

3

Petitioner.

Evidence technicians recovered three.40 caliber shell casings.  The shell casings came from the recovered firearm, a blue steel automatic, which also had blood in the barrel.  The minivan had two bullet holes in the glass on the rear driver's side door. Blood led from the walkway of the house to the porch.  Petitioner had blood smears on both his pants and gym shoes.  Petitioner had insufficient particles on his hands and body to identify the presence of gunshot residue.

Mynum woke up in the hospital three days later.  He needed multiple skin grafts and stitches for the gunshot injuries.  He also injured his lip, had scars around his eyes, had a fracture above his eye, and had hearing difficulties.  Mynum spent one month in hospital recovering from his injuries.  At the time of trial, he suffered memory loss and hearing problems in his right ear.

B.  Procedural

Petitioner filed a direct appeal in the Michigan Court of Appeals, raising the following claims:

> I. Petitioner's conviction of assault with intent to murder was constitutionally deficient and must be vacated because there was insufficient evidence to convict him of shooting Robert Mynum.

> II. Petitioner is entitled to resentencing where the trial court violated his state and federal constitutional due process rights in wrongly scoring offense variables, and where these mistakes resulted in a higher sentencing guidelines range.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion.  People v. Riggins, No. 274093, 2008 WL 314934,(Mich. Ct. App. Feb. 5, 2008).  Petitioner subsequently filed an application for leave to appeal in the Michigan

4

Supreme Court, raising the same claims that were raised in the Michigan Court of

Appeals. The Michigan Supreme Court denied the application because it was not

persuaded that the questions presented should be reviewed by the Court.  People v.

Riggins, 481 Mich. 881 (2008).

Petitioner then filed the current petition.  (Doc. 1).  After filing, Petitioner moved to

hold his petition in abeyance so that he could return to the state court to exhaust his

state court remedies with respect to additional claims.  (Doc. 11).  The Court granted

the motion.  (Doc. 14)

Petitioner returned to the state court and filed a motion for relief from judgment,

raising the following claims:

I. Petitioner is entitled to a new trial where the public was excluded from
the courtroom and there was no accommodation for public access to the
proceedings during jury selection, which violated [Petitioner's] Sixth
Amendment Right to a public trial.

II. Petitioner  was denied due process and a fair trial, where the
prosecution: (a) withheld evidence; (b) failed to admit evidence for the jury
to view, in violation of Brady v. Maryland, 373 U.S. 83 (1963). Defense
trial counsel was constitutionally ineffective in failing to present a defense
and raise these issues during trial.

III. Petitioner was denied due process and a fair trial where, (a) the court
made improper judicial comments and (b) improper evidentiary ruling.

IV. Defense trial counsel and appellate counsel were constitutionally
ineffective when trial counsel failed to object to: (a) the closure of the
court, (b) the waiver of witnesses, (c) the improper evidentiary ruling, the
witnesses' statements not being admitted, and (d) failure to raise issues of
constitutional magnitude.

V. The court abused [its] discretion by imposing court costs and attorney
fees without [assessing] defendant's ability to pay.

VI. [Petitioner] was constructively denied the right to counsel, when
counsel was assigned on the same day of his preliminary examination,

shortly before the hearing itself.

The trial court denied the motion for relief from judgment, rejecting each of Petitioner's new claims on the merits. See Doc. 22-5, Opinion and order on Defendant's Motion for Relief from Judgment. Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, raising the same claims. The Michigan Court of Appeals denied the application for leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). People v. Riggins, No. 307591 (Mich. Ct. App. June 8, 2012). The Michigan Supreme Court also denied relief under Rule 6.508(D). People v. Riggins, 493 Mich. 917 (2012) (table).

Petitioner then filed an amended petition (16), presenting the following claims: (1) sufficiency of the evidence, (2) improper scoring of a sentencing variable, (3) denial of a public trial, (4) prosecutorial misconduct, (5) judicial bias, (6) ineffective assistance of counsel, (7) improper imposition of costs and fees, and (8) constructive denial of counsel at preliminary examination.

### III. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

6

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S. Ct. 1855, 1862 (2010)((quoting Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997); Woodford v. Viscotti, 537 U.S. 19, 24 (2002)(per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state

7

court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  Id.

    "[I]f this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d) does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents.  Id.  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  Id. (citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law."  Woodford, 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington, 131 S. Ct. at 786-87.

IV.  Analysis

A.  Sufficiency of the Evidence

1.

    In his first claim, Petitioner acknowledges there was sufficient evidence to convict

him of the lesser offense of assault with intent to do great bodily harm for hitting the victim after the shooting because several eyewitnesses saw the beating.  However, Petitioner says that there was insufficient evidence to convict him of assault with intent to commit murder because no one testified that they saw him fire the gun, he did not confess, and there was no other compelling circumstantial evidence to sustain that charge.

2.

"The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In Re Winship, 397 U.S. 358, 364 (1970).  The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the Jackson standard.  See Cavazos v. Smith, 132 S. Ct. 2, 4, 181 L. Ed.

9

2d 311 (2011). "Because rational people can sometimes disagree, the inevitable

consequence of this settled law is that judges will sometimes encounter convictions that

they believe to be mistaken, but that they must nonetheless uphold." <u>Id</u>. Indeed, for a

federal habeas court reviewing a state court conviction, "the only question under

<u>Jackson</u> is whether that finding was so insupportable as to fall below the threshold of

bare rationality." <u>Coleman v. Johnson</u>, 132 S.Ct. 2060, 2065, 182 L. Ed. 2d 978 (2012).

3.

The Michigan Court of Appeals rejected Petitioner's claim, explaining:

> Here, contrary to defendant's contention, the police presented circumstantial evidence to show that defendant shot the victim. The victim testified that immediately after someone began shooting into the van, defendant opened the van door. Defendant was holding a gun in his hand. He appeared angry, grabbed the victim, and pulled him out of the van. Other witnesses testified that defendant began to kick and beat the victim in the head. Defendant was also seen near the location at which the gun was found. This evidence, when combined with the testimony regarding defendant's statements during his removal of the victim from the van and during the beating, supports a finding that defendant was guilty of one continued assault on the victim that included the shooting. The prosecutor was not required to disprove defendant's theory that he innocently arrived after the shooting, happened to pick up the gun, and then attempted to slap the victim in the face in an attempt to revive him. <u>People v. Nowack</u>, 462 Mich. 392, 400, 614 N.W.2d 78 (2000). Defendant also ignores the fact that from the evidence presented, the jury could have decided that defendant's extensive physical assault on the victim after the shooting, even when considered alone, was designed to kill the victim. The prosecutor presented sufficient evidence to support the assault conviction.

<u>People v. Riggins</u>, No. 274093, 2008 WL 314934 at *1.

4.

The Court of Appeals conclusion is reasonable. Taken most favorably to the

prosecution, there was sufficient evidence presented at trial to sustain Petitioner's

conviction for assault with intent to commit murder. Most pointedly, the victim himself

10

testified that after he realized that someone was shooting into the van, he saw Petitioner open the van door while holding a gun in his hand, pull him out, and start beating him. The beating was witnessed by people in the neighborhood. A fair inference can be drawn that the same man who beat the victim and who the victim saw holding a gun was the person who just shot him. The <u>Jackson</u> standard calls for a reviewing court to view the evidence in the light most favorable to the prosecution. So viewed, the trial record allowed the state court to reasonably conclude that sufficient evidence was presented to sustain the assault with intent to murder conviction. Petitioner is not entitled to habeas relief on this claim.

B.  Sentencing Claim

1.

In his second claim, Petitioner says that the trial court incorrectly scored an offense variable dealing with a pattern of felonious criminal activity against a person when it calculated his sentence guideline range. Habeas relief is not available on this type of sentencing claim.

2.

It is well-established that "federal habeas corpus relief does not lie for errors of state law." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991). Any claim by Petitioner that the state trial court misapplied the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. See <u>Howard v. White</u>, 76 F. App'x 52, 53 (6th Cir. 2003). Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence. See <u>Shanks v. Wolfenbarger</u>, 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005). Any claim

11

that the state trial court miscalculated the sentencing guidelines thus does not entitle

petitioner to habeas relief.  Welch v. Burke, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999).

Accordingly, this claim does not provide a basis for granting habeas relief.

C.  Public Trial

1.

Petitioner's third claim asserts a violation of his right to a public trial.  In support,

he says that members of his family were excluded from the courtroom during the jury

selection process.  Petitioner also says that the trial court would only allow members of

the public to enter the courtroom at trial during breaks in the testimony.

2.

"The central aim of a criminal proceeding must be to try the accused fairly."

Waller v. Georgia, 467 U.S. 39, 46 (1984).  The Sixth Amendment public-trial guarantee

was created to further that aim.  Id. (citing Gannett Co. v. DePasquale, 443 U.S. 368,

380 (1979)).  A public trial helps to ensure that judge and prosecutor carry out their

duties responsibly, encourages witnesses to come forward, and discourages perjury. Id.

The violation of the constitutional right to a public trial is a structural trial error, not

subject to the harmless error analysis.  Id. at 49-50, n. 9.

In Presley v. Georgia, 558 U.S. 209, 216 (2010), the Supreme Court held that a

criminal defendant's Sixth Amendment right to a public trial was violated when the trial

court excluded the public from the voir dire of prospective jurors, and the court failed to

consider reasonable alternatives to closure.  Petitioner relies on Presley to support his

claim.

3.

12

The trial court rejected this claim raised in Petitioner's motion for relief from

judgment, explaining in relevant part:

> The United States Supreme Court [in <u>Presley</u>] recently held that a
> defendant's Sixth Amendment  right to a public trial includes the jury selection
> process; and that a trial court must make reasonable attempts to accommodate
> the public at that stage of the procedure or  provide sufficient factual support for a
> decision to close the process. The defendant relies primarily on that holding.
> There are a number of issues that will ultimately have to be addressed involving
> the <u>Presley</u> decision.
> Thus far the Michigan Court of Appeals has held that a defendant's  First
> and Sixth Amendment rights to a public trial are waived unless preserved by
> objection at the
> Given the emphasis on the court having to "consider reasonable alternatives to
> closing the proceeding, and ... mak[ing] findings adequate to support the
> closure," it is questionable that waiver can be automatically assumed.  However,
> where, as in this
> case, the decision is (or was) final at the time of the <u>Presley</u> decision, the United
> States Supreme Court has held:
>> a new rule for the conduct of criminal prosecutions is to be applied
>> retroactively to all cases, state or federal, pending on direct review or not
>> yet final, with no exception for cases in which the new rule constitutes a
>> "clear break" with the past.
> This same or a similar standard has been applied by the Michigan Supreme
> Court in respect to the retroactive application of <u>Halbert v Michigan</u> in cases
> which had become final.  Likewise, the Sixth Circuit Court of Appeals reached a
> similar result with respect to the use of collateral appeals (writs of habeas
> corpus) to attack the denial of counsel at first tier appeals in plea based
> convictions.
> In this case the decision was final at the time of the <u>Presley</u> decision.
> Although the Per Curiam opinion of the Supreme Court suggests that the law
> was well settled at the time of the Presley decision the language used by the
> Court is not controlling when determining that a rule of law is new.  Instead a rule
> is new if a reasonable jurist could reach a different decision.  Given the Georgia
> Supreme Court's decision in <u>Presley</u> such is the case.  Based on the reasoning
> employed by the Michigan Supreme Court, the rule announced in <u>Presley</u> would
> not be retroactive.
> More importantly, defendant does not provide a factual basis that
> establishes that there was a systematic exclus[on of the public either during the
> vo[r dire or the actual trial.  That lack obviates the need to reach the retroactivity
> issue.  Defendant states in his brief, "The record is not clear whether the
> courtroom was closed during jury  selection....  Although defendant provides
> affidavits from two relatives that indicate they were asked to leave the courtroom
> during jury selection, the affidavits do not indicate whether it was to allow jurors

13

to be seated and then to return, whether there was some other reason they were asked to leave, whether others were asked to leave, or whether persons were not allowed in during the selection process.  In short the defendant provides no factual basis to support the allegation that the courtroom was closed to the public during the selection process.  His equivocal statement does not even suggest the existence of evidence of closure.

He also argues that the public was excluded during other portions of the trial and offers excerpts of the Trial Judge's statements in support.  The Trial Court did admonish the spectators about disrupting the proceedings by entering and exiting the court room during testimony:

> THE COURT: Ladies and gentlemen in the audience.  Both counsel and the defendant are here and the OIC.  I'm just going to say this one more time. There is a note outside. Please don't come in when someone is on the witness stand testifying. It is very disruptive, it is very rude.  I know these people go to the movies, and talk in the movies and go in and leave, all of that. This is not the movies. This is a very important court proceeding. It is important to the People, it is important to the defendant and it is very distracting and disruptive for people to be coming and going when.
>
> When you leave, as the sign says, you may not come in when someone is testifying. You cannot come in until we take the next break and we take them fairly often. I would really appreciate consideration for everyone involved in the case.

Again, there is no evidence the trial court closed the courtroom to the public.  The Trial Court merely asked for spectators to exercise common courtesy and refrain from actions that distracted the jury and others in the court room.

As there is nothing in the record to support the defendant's allegation that the Trial Court closed the proceedings at any point to the public, the motion as to that claim is DENIED.

Doc. 22-5, at pp. 2-5 (footnotes omitted).

4.

The trial court's reasoning and conclusion is reasonable and not contrary to controlling Supreme Court law.  At the time of Petitioner's trial in 2006, it was unclear whether the Sixth Amendment public-trial right applied to the voir dire process at all. Although the Supreme Court later held that there is a First Amendment right of public access during voir dire in Press-Enter. Co. v. Super. Ct., 464 U.S. 501, 510-11 (1984),

the concurrence suggested that the Sixth Amendment right to a public trial may be more limited: "If the defendant had advanced a claim that his Sixth Amendment right to a public trial was violated by the closure of the voir dire, it would be important to determine whether the selection of the jury was a part of the 'trial' within the meaning of that Amendment.") (Stevens, J.).  Accordingly, at the time of Petitioner's trial it was not "clearly established" as required by §2254(d) that Petitioner has a right to public access to his jury selection proceeding.  Moreover, as the trial court explained, even if <u>Presley</u> applied, Petitioner had not provided evidentiary support for his claim that he was denied a public trial during voir dire.  As such, the state trial court's rejection of this claim on the merits in its opinion denying his motion for relief from judgment was not contrary to, or involve an unreasonable application of, clearly established Supreme Court law. Petitioner is therefore not entitled to habeas relief based on this claim.

With respect to the remainder of the claim, the record at most indicates that the trial court admonished members of the public from repeatedly entering and exiting the courtroom during the reception of evidence.  The trial court only required the attendees of the trial to wait for breaks in the testimony to enter or leave.  No member of the public was excluded from attendance, and therefore his Sixth Amendment right to a public trial was not violated.  See <u>United States v. Dugalic</u>, 489 F. App'x 10, 19 (6th Cir. 2012) ("The public was not denied access to the courtroom during closing arguments; it was merely prevented from entering and leaving the courtroom while those arguments were going on.").

In sum, Petitioner is not entitled to habeas relief on this claim.

15

D.  Prosecutorial Misconduct

1.

Petitioner's fourth claim asserts that the prosecutor withheld from the defense a record from a gunshot residue test.  According to Petitioner's allegations, the officer who performed the test checked a box on the test form indicating that Petitioner had not washed his hands.  Petitioner also claims that the prosecutor committed misconduct by not admitting witness statements as exhibits to prevent the jury from viewing them during deliberations.

2.

The Due Process Clause requires the state to disclose exculpatory evidence to the defense.  See Brady v. Maryland, 373 U.S. 83 (1963).  "There are three components of a true Brady violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a Brady claim, the petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of the petitioner's guilt.  See Carter v. Bell, 218 F.3d 581, 601 (6th Cir. 2000); Luton v. Grandison, 44 F.3d 626, 628-29 (8th Cir. 1994). The petitioner bears the burden of establishing each of these three elements. See Carter, 218 F.3d at 601.

16

3.

Here, the trial court rejected the first allegation of misconduct on the merits by finding that "[t]he record does not support the defendant's position that the report was withheld."  Doc. 22-5 at p. 6.  That is, the trial court found as a factual matter that the gunshot residue test form was in the possession of defense counsel, and therefore it was not suppressed by the prosecution.  This factual finding bars habeas relief unless Petitioner can rebut it by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).  Petitioner has failed to sustain this burden.  Moreover, in reviewing the trial record, it appears that defense counsel did in fact have access to the record because he elicited from the forensic lab witness that the test result was negative.  Additionally, at a pretrial conference defense counsel specifically asked for a copy of the test form, and there was no later objection to having not received it.  See Tr. 6/14/2006, p. 4.  At trial, defense counsel waived the presentation of the officer who filled-out the form.  Accordingly, it appears from the record that defense counsel had the form, and Petitioner has not overcome the presumption of correctness that attaches to the factual finding by the state court that formed the basis for rejecting this claim.

Petitioner also asserts that the prosecutor committed misconduct by suggesting, through the questioning of the forensic examiner who tested the gunshot residue sample, that Petitioner might have washed his hands after the shooting.  This contention is not supported by the record.  Initially, defense counsel obtained a concession by the witness, William Steiner, that there was no evidence of gunshot residue on Petitioner.  On cross examination, the prosecutor then elicited testimony that gunshot residue does not cling to a person who fired a gun, and that it is easily brushed

17

off. He did not testify or suggest that Petitioner, in fact, washed away any gunshot residue on his person.  The testimony concerned gunshot residue in general and the relative value of a negative test.  There was no attempt by the prosecutor to deliberately mislead the jury.

Finally, Petitioner's contention that the prosecutor withheld witness statements from the jury also lacks record support.  The record shows that during closing argument, the prosecutor told the jury it could request to view the trial exhibits.  One of the exhibits was Petitioner's statement to police.  Petitioner reasons that because only his statement was admitted, but not the other witness statements, the argument amounted to an effective suppression of those other statements.  It did not.  Defense counsel had copies of the witnesses statements, and he was free to impeach the witnesses' testimony during trial with any prior inconsistent statements.  If he had attempted to admit the statements as substantive evidence, however, they would have been excluded as inadmissible hearsay.  Compare Michigan Rule of Evidence 801(d)(1) and 801(d)(2) (Prior inconsistent statement of witness generally not admissible whereas prior statement by party-opponent is admissible as substantive evidence). The prosecutor did not suppress any statements made by other witnesses.

Overall, the trial court's rejection of Petitioner's prosecutorial misconduct claim is reasonable.  Petitioner is therefore not entitled to habeas relief on this claim.

### E.  Judicial Bias

#### 1.

Petitioner's fifth claim asserts that the trial court indicated bias during the jury selection process by stating that it thought it would be a two-day trial, and that if it went

18

for a third day the jury would see "one angry judge."  He alleges that the trial court also improperly sustained an objection, betraying his hidden bias.  The trial court rejected this claim in denying Petitioner's motion for relief from judgment.

2.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case.  See <u>Bracy v. Gramley</u>, 520 U.S. 899, 904-05 (1997).  A trial judge has wide latitude in conducting trials, but they must preserve an attitude of impartiality and scrupulously avoid giving the jury the impression that the judge believes that the defendant is guilty.  See <u>Brown v. Palmer</u>, 358 F. Supp. 2d 648, 657 (E.D. Mich. 2005).

3.

Contrary to Petitioner's argument, the trial court's statement that it thought the trial would last two days did not indicate any partiality towards the prosecutor.  The statement occurred during the jury selection process and was aimed at ascertaining the potential jurors' availability.  The comment that a longer trial would result in an angry judge appears to nothing more than an informal communication to the jury that while he could not absolutely control the length of the trial, that he could see no good reason it would be prolonged.  Again, the statement did not indicate bias towards either side. The Supreme Court has ruled that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish judicial bias or misconduct.  <u>Liteky v. United States</u>, 510 U.S. 540, 555-56 (1994).  "A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom  administration -remain immune."  <u>Id</u>.  That is the case here.  The trial court's conduct, at most,

19

amounted to an expression of predicted impatience.

Petitioner also points to an adverse evidentiary ruling by the trial court as indicating bias. Adverse rulings, however, are not themselves sufficient to establish bias or prejudice which will disqualify a judge. Vliet v. Renico, 193 F. Supp. 2d 1010, 1016 (E.D. Mich. 2002).

In sum, the trial court properly rejected Petitioner's judicial bias claim. Petitioner is therefore not entitled to habeas relief on this claim.

### F.  Ineffective Assistance of Counsel

#### 1.

In his sixth claim, Petitioner says that his trial counsel was ineffective for failing to object to the closure of the courtroom, waiving the production of a prosecution witness, and for failing to challenge an improper hearsay ruling. He also argues that his appellate counsel was ineffective for failing to raise the claims raised in his motion for relief from judgment. Again, the trial court denied relief based on this claim on collateral review.

#### 2.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner's counsel was ineffective. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment. Id. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial. Id.

20

With respect to the performance prong, a petitioner must identify acts that are "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The Court's scrutiny of counsel's performance is viewed through a highly deferential lens. Id. at 689.  Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. at 690.  And it is the petitioner who bears the burden of overcoming the presumption that his counsel's actions constituted sound trial strategy. Id. at 689.

To satisfy the prejudice prong under Strickland, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome. Id.  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." Id. at 686.

### 3.

As explained in detail above, none of the claimed errors have merit.  With respect to the closure of the courtroom, as discussed above, there was no error and therefore no viable objection.  Bradley v. Birkett, 192 F. App'x 468, 475 (6th Cir. 2006).  As for the production of Officer Johnson, defense counsel stipulated to waive him.  There was no failure to object – there was a conscious decision to not have this witness testify. In fact, Johnson's testimony would have been cumulative to Steiner's testimony regarding the result of the gunshot residue test.  Counsel was not ineffective for failing to call him at

21

trial.

Finally, Petitioner asserts that his counsel was ineffective for failing to object to one of the trial court's evidentiary rulings. During the testimony of one of the prosecution's eyewitnesses, the witness stated that she was intimidated by the police when she made her statement. <u>See</u> Tr. III, p 38-39. She started to explain that she felt intimidated when the officer told her some of the things that other witnesses had said. When she began to relate the details of the other witnesses' statements, the prosecutor objected on hearsay grounds. Defense counsel countered that it "goes to her state of mind," but the court sustained the objection. <u>Id</u>. at 39. There was nothing further for defense counsel to do, and so he was not ineffective for further pressing the matter. The details and contents of the other statements amounted to hearsay. The admissible point, and the point defense counsel was attempting to make was that the witness felt intimidated when the officer began to compare her statement to the other statements – irrespective of the specific content of those statements. Counsel performed reasonably with respect to this occurrence.

Accordingly, Petitioner has failed to show that his trial counsel was ineffective or that the trial court was unreasonable in concluding the same. Relief is denied as to this claim.

## G. Costs and Fees

Petitioner's next claim asserts that the trial court erred in imposing fines and costs as part of his sentence. This claim must be denied because it is not a viable claim on habeas review. Under section 2254, subject-matter jurisdiction exists "only for claims that a person is in custody in violation of the Constitution or laws or treaties of

22

the United States." <u>Washington v. McQuiggin</u>, 529 F. App'x 766, 772-773 (6th Cir.

2013); see also <u>United States v. Watroba</u>, 56 F.3d 28, 29 (6th Cir. 1995) (monetary fine

is not a sufficient restraint on liberty to meet the 'in custody' requirement of 28 U.S.C. §

2255).

### H.  Constructive Denial of Counsel at Preliminary Examination

#### 1.

Petitioner's final claim asserts that he was only allowed to meet with his assigned

counsel for two minutes prior to the preliminary examination while sitting in the same

hospital room with the complainant, prosecutor, and district court judge.

#### 2.

Under the Sixth Amendment, "[i]n all criminal prosecutions, the accused shall

enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const.

amend VI.  The "plain wording of this guarantee thus encompasses counsel's

assistance whenever necessary to assure a meaningful 'defence.'" <u>United States v.</u>

<u>Wade</u>, 388 U.S. 218, 225 (1967). A criminal defendant has the right to the advice of

counsel at "any stage of the prosecution, formal or informal, in court or out, where

counsel's absence might derogate from the accused's right to a fair trial." <u>Id</u>. at 226.

When a criminal defendant is deprived of counsel at a preliminary hearing, "the

test to be applied is whether the denial of counsel . . . was harmless error." <u>Coleman v.</u>

<u>Alabama</u>, 399 U.S. 1, 11 (1970) (citations omitted); see also <u>Adams v. Illinois</u>, 405 U.S.

278, 282-83 (1972) ("the lack of counsel at a preliminary hearing involves less danger to

'the integrity of the truth-determining process at trial' than the omission of counsel at the

23

trial itself or on appeal.") (internal quotation marks omitted); accord Takacs v. Engle, 768 F.2d 122, 124 (6th Cir. 1985); McKeldin v. Rose, 631 F.2d 458, 460—61 (6th Cir. 1980); Dodge v. Johnson, 471 F.2d 1249, 1252 (6th Cir. 1973) (record failed to establish that lack of counsel at preliminary examination prejudiced petitioner's rights at trial or in any way tainted finding of guilt).

### 3.

The trial court denied relief on this claim, explaining that Petitioner's contentions were not supported by the record.  The Court agrees.  Petitioner has not shown that he was prejudiced by any constructive absence of counsel at the preliminary examination. As the trial court noted, Petitioner was assigned counsel on May 10, 2006 and the preliminary examination was held on May 30, 2006, in the victim's hospital room. Accordingly, Petitioner was represented by counsel for twenty days prior to the exam. The Court's review of the preliminary examination transcript reveals that defense counsel was well-prepared and effectively represented Petitioner's interests at the examination. He actively participated in the exam by thoroughly cross examining the victim.  The questioning shows that counsel was prepared and was familiar with the facts of the case.  The victim survived, so no evidence from the preliminary examination was admitted against Petitioner at his trial.  The trial court's determination that counsel's performance at the examination did not prejudice Petitioner's defense, therefore, was not an unreasonable application of clearly established federal law.

Petitioner, however, says that he need not demonstrate prejudice because his claim falls under United States v. Cronic, 466 U.S. 648 (1984).  In Cronic, the Supreme Court held that the denial of counsel during a critical stage of the proceeding amounts to

a per se denial of the effective assistance of counsel.  See Cronic, 466 U.S. at 659.  If a claim is governed by Cronic the defendant need not demonstrate any prejudice resulting from the lack of effective counsel. See Mitchell v. Mason, 325 F.3d 732, 741 (6th Cir. 2003).  Three types of cases warrant the presumption of prejudice: (1) when the accused is denied the presence of counsel at a critical stage; (2) when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) when counsel is placed in circumstances in which competent counsel very likely could not render assistance. Mitchell, 325 F.3d at 742.

Contrary to Petitioner's assertions, the circumstances presented here do not qualify as a structural error under Cronic.  Counsel was appointed to represent Petitioner weeks before the examination, and even if Petitioner truthfully asserts that he did not meet with counsel in person prior to the exam, counsel obviously had otherwise prepared for the proceeding.  Petitioner may believe that his counsel's performance could have been more aggressive or probing, but such a situation does not qualify as a lawyer who "fails to subject the prosecution's case to meaningful adversarial testing." Cronic, 466 U.S. at 659.  Counsel's performance is readily distinguishable from situations where ineffective assistance has been presumed. See, e.g., Rickman v. Bell, 131 F.3d 1150, 1156-60 (6th Cir. 1997) (holding that Cronic applied where defense counsel "combined a total failure to actively advocate his client's cause with repeated expressions of contempt for his client for his alleged actions"); Martin v. Rose, 744 F.2d 1245, 1250-51 (6th Cir. 1984) (holding that defense counsel's "total lack of participation deprived Martin of effective assistance of counsel at trial as thoroughly as if he had been absent," thereby violating Martin's Sixth Amendment rights).

25

Accordingly, Petitioner is not entitled to relief on this claim.

## V.  Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  <u>Slack v. McDaniel</u>, 529 U.S. 473 (2000).  Because reasonable jurists could not conclude that the Court's decision denying Petitioner relief on all of his claims is debatable or wrong, Petitioner is not entitled to a certificate of appealability.

## VI.  Conclusion

Accordingly, for the reasons stated above, the petition is DENIED.  A certificate of certificate of appealability is also DENIED.  This case is DISMISSED.

SO ORDERED.


<u>S/Avern Cohn</u>
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: May 11, 2015
        Detroit, Michigan